IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEXIS M. COERVER, | § | |
| individually and on behalf of all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 15-cv-3400 |
| v. | § | |
| | § | |
| CAHABA GOVERNMENT | § | CLASS ACTION |
| ADMINISTRATORS, LLC | § | |
| | § | |
| Defendant. | | |

### PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

ALEXIS M. COERVER, individually and on behalf of all other persons similarly situated, brings this action against Defendant CAHABA GOVERNEMENT ADMINISTRATORS, LLC ("Defendant"), and alleges, upon personal knowledge as to her own conduct, and upon information and belief as to the conduct of others, as follows:

### INTRODUCTION

1.      Plaintiff brings this class action against Defendant to secure redress because Defendant willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiff's and other class members' cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded or artificial voice message.

2.      Defendant, or someone on Defendant's behalf, made one or more unauthorized calls to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of soliciting business from Plaintiff.

3.      The TCPA was enacted to protect consumers from unsolicited telephone calls

1

exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff seeks

an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers,

and an award of statutory damages to the members of the Class under the TCPA equal to $500.00

per violation, together with court costs, reasonable attorneys' fees, and treble damages (for

knowing and/or willful violations).

## PARTIES

4.      Plaintiff ALEXIS M. COERVER is a citizen of the State of Texas and resides in

Houston, Harris County, Texas.

5.      Defendant CAHABA GOVERNMENT ADMINISTRATORS LLC is a limited liability

company organized under the laws of, and headquartered in, the State of Alabama.  Defendant

may be served with process by serving Scott Shelton, 500 Corporate Parkway, Birmingham, AL

35242.

6.      Whenever in this complaint it is alleged that Defendant committed any act or

omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or

employees committed such act or omission and that at the time such act or omission was

committed, it was done with the full authorization, ratification or approval of Defendant or was

done in the routine normal course and scope of employment of the Defendant's officers, directors,

vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action

arises under the TCPA, which is a federal statute.

8.      The Court has personal jurisdiction over Defendant because it conducts significant

business in this District, and the unlawful conduct alleged in this Complaint occurred in, was

directed to, and/or emanated from this District.

9.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §
1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of
$5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a
citizen of a state different from Defendants.  Furthermore, the Plaintiff Class consists of at least
one hundred members.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the
wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this
District.

11.      Defendant is subject to specific personal jurisdiction in this District because it has
continuous and systematic contacts with this District through its telemarketing efforts that target
this District, and the exercise of personal jurisdiction over Defendant in this District does not
offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the
telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing…can
be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No.
102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

13.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the
use of automated telephone equipment. The TCPA limits the use of automatic dialing systems,
artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies
several technical requirements for fax machines, autodialers, and voice messaging systems—

principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

14.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and all ATDS calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

15.     As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the National Do Not Call Registry.

16.     Furthermore, in 2008, the FCC issued a Declaratory Ruling reiterating that "a company on whose behalf a telephone call is made bears the responsibility for any violations." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, 23 FCC Rcd 559, 564-65 (¶ 10) (2008). This ruling specifically recognized "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b).

17.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## COMMON FACTUAL ALLEGATIONS

18.     Defendant is an insurance company that promotes its services to consumers by way of aggressive telemarketing campaigns. Unfortunately for consumers, Defendant, for its telemarketing scheme, utilized (and continues to utilize) a sophisticated telephone dialing system to call individuals *en masse* promoting their services. Defendant obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers or extracting contact information from active websites. On information and belief, Defendant utilizes a third-

party call center to place calls on its behalf under the misguided belief this arrangement insulates Defendant from TCPA liability.

19.     In Defendant's overzealous attempt to market its services, it placed (and continues to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendant. Defendant knowingly made (and continues to make) these telemarketing calls without the prior express written consent of the call recipients. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTUAL BACKGROUND AS TO PLAINTIFF COERVER

20.     Defendant contacted Plaintiff on her cellular telephone number *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), dozens of times (often 4 to 10 per day) between August and November of 2015. Plaintiff never consented in any manner to receive these calls to her cellular telephone.

21.     Plaintiff received all calls as described above on her cellular telephone assigned a number ending in 8778.

22.     Plaintiff's caller ID read "575-993-5805" whenever Defendant called her cellular phone.

23.     Plaintiff answered several of the calls and interacted with Defendant's automatic dialing system and ultimately live operators

24.     On the occasions wherein Plaintiff was able to answer calls, she always experienced a momentary pause before a pre-recorded voice greeted him.

25.     Plaintiff has received auto-dialed marketing calls before.  Plaintiff viewed the momentary pause as a sign a computer had auto-dialed her number and then automatically routed

the call to a Defendant's representatives once Defendant's system recognized the call had been answered.

26.     When Plaintiff answered the calls wherein she interacted with a representative, it was always difficult to understand the representative.  Furthermore, the message was often disrupted by the sound of background noise that sounded like a call center.

27.     Defendant's representative always tried to sell Plaintiff health insurance.

28.     Plaintiff was not interested in Defendant's services and requested Defendant remove her number from Defendant's dialing system.

29.     Defendant continues to call Plaintiff without her express consent.

30.     Defendant also calls and leaves pre-recorded messages on Plaintiff's voicemail when she is unable to answer an incoming call from defendant.

31.     It was obvious to Plaintiff that Defendant was engaged in a marketing campaign wherein Defendant contacts a large number of consumers using an autodialer.

32.     Based on the circumstances of the calls – including but not limited to, a signature pause before pre-recorded voice started speaking, the presence of a pre-recorded voice, and receipt of multiple calls over a short period of time – Plaintiff believed Defendant called her cellular telephone using an ATDS that automatically selected her number from a computer database.

33.     On information and belief, Defendant's ATDS called Plaintiff on every occasion.

34.     Plaintiff understood the purpose of Defendant's calls was to solicit business from Plaintiff because Defendant pitched health insurance plans to Plaintiff.

35.     The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

36.     Plaintiff is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 8778.

37.     The telemarketing calls Defendants placed to Plaintiff were an annoyance, interfered with her work, and invaded Plaintiff's privacy.

38.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

39.     Plaintiff did not provide Defendant with prior express written consent to receive calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

40.     All calls Defendant made to Plaintiff violate 47 U.S.C. § 227(b)(1).

41.     Plaintiff has reason to believe Defendant has called, and continues to call, thousands of wireless telephone customers to market their products and services.

42.     Plaintiff's overriding interest is ensuring Defendant ceases all illegal telemarketing practices and compensate all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

43.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of herself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

44.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

A.    CLASS ALLEGATIONS

45.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following classes defined as follows (the "Class"):

> All individuals in the United States who received a call made by or on behalf of Defendant to the individual's cellular telephone through the use of an automatic telephone dialing system, or pre-recorded voice, or any other device having the capacity to dial numbers without human intervention, from October 16, 2013 to the date the Class is certified, where Defendant's records fail to indicate prior express written consent from the recipient to make such call.

46.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

47.    This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

48.    Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

49.    Plaintiff and members of the Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the

Class members *via* their cellular telephones by using an ATDS, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of Plaintiff and the Class members.

**B.    NUMEROSITY**

50.    The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

51.    On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Class.  Members of the Class can be easily identified through Defendant's records.

**C.    COMMONALITY AND PREDOMINANCE**

52.    There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

53.    Common questions for the Class include, but are not necessarily limited to the following:

       a.      Whether Defendant's conduct violated the TCPA;

       b.      Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or its agents with prior express written consent to receive such phone calls after October 16, 2013;

       c.      Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

       d.      Whether Defendant systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system or pre-recorded voice to any telephone number assigned to a cellular phone service; and

e.     Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

**D.     TYPICALITY**

54.     Plaintiff's claims are typical of the claims of the other members of the Class.

55.     Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

**E.     ADEQUATE REPRESENTATION**

56.     Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

57.     Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

**F.     POLICIES GENERALLY APPLICABLE TO THE CLASS**

58.     This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

59.     Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**G.     SUPERIORITY**

60.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

11

61.     The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

62.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

63.     Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

64.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227

65.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

66.     Defendant made unsolicited and unauthorized calls using an ATDS or pre-recorded voice to Plaintiff's and the Class Members' cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Plaintiff Class Members.

67.     Defendant made the calls without prior express written consent of the Plaintiff and Plaintiff Class Members.

68.     The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

69.     As a result of Defendant's violations of 47 U.S.C. § 227, *et. seq.*, Plaintiff and the Plaintiff Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

70.     Because Defendant had knowledge that Plaintiff and the Plaintiff Class Members did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and Plaintiff Class Members.

71.     Plaintiff and the Plaintiff Class Members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## ATTORNEY'S FEES

72.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

73.     Plaintiff is entitled to recover reasonable attorney fees and request the attorneys' fees be awarded.

## JURY DEMAND

74.     Plaintiff, individually and on behalf of the Plaintiff Class, demand a jury trial on all issues triable to a jury.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the Plaintiff Class, pray for the following relief:

a.   An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Hughes Ellzey, LLP as lead Class Counsel.

b.   An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c.   An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

d.   Injunctive relief prohibiting Defendant's conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.   Pre-judgment and post-judgment interest on monetary relief;

f.   An award of reasonable attorneys' fees and court costs in this action;

g.   All other and further relief as the Court deems necessary, just, and proper.

Dated:  November 18, 2015.

Respectfully Submitted,

_____*/s/ W. Craft Hughes*_____
W. Craft Hughes—craft@hughesellzey.com
Texas Bar No. 24046123
Jarrett L. Ellzey—jarrett@hughesellzey.com
Texas Bar No. 24040864
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**

14